Juanita TILLEY, Appellant,

v.

Raymond BELL, Appellee.

Court of Appeals of Kentucky.

April 28, 1972.

---

James B. Lenihan, Hargadon, Hargadon, Lenihan & Harbolt, Louisville, for appellant.

Chester A. Vittitow, Jr., Hogan, Taylor, Denzer & Bennett, Louisville, for appellee.

EDWARD P. HILL, Jr., Judge.

Appellant's lone argument is that the trial court erred in failing to conduct a hearing on her motion for a new trial for misconduct of the jury. Wedged into this argument is a veiled contention that the amount of the verdict is inadequate at first blush. We affirm.

While appellant and her daughter were stopped for a traffic light on Preston Street in Louisville, Kentucky, waiting for the green light, appellee Raymond Bell ran into the rear of the automobile being operated by appellant and owned by her husband. This occurred March 30, 1967. Nearly one year later and on February 23, 1968, appellant, her daughter and husband filed suit claiming damages to appellant Juanita Tilley for pain and suffering and medical expenses; damages for the daughter for pain and suffering; damages to the husband for loss of consortium, and damages to his automobile. By numerous amendments, the appellant's demands were increased to $75,000, the daughter's demands were reduced from $8,000 to $2,000, and the husband's demands were limited to a demand of $500 for damages to his car.

A jury verdict was returned for appellant for medical and hospital expenses of $4,462.83 and $5,000 for pain and suffering.

The husband received a verdict and judgment for $350 for damages to his car. There is no question as to the verdict for the daughter.

The case was tried in the circuit court on September 16 and 17, 1969.

On November 7, 1969, appellant filed the affidavit of one of her attorneys, Harry L. Hargadon, and on November 20, 1969, she filed the affidavits of James A. Little, one of the jurors who tried the case, and Delbert Brown, a member of the jury panel at the time who was excused from serving on the case for personal reasons, all relating to the question of the claimed misconduct of the jury.

■ It is not shown by this record whether the same panel of jurors serving at the trial was still available November 20, 1969. The customary length of jury service in Jefferson County does not exceed thirty days. Affiant Brown shows he served seven days. Aside from this posture of the case, it was forty-six days after the judgment was entered on the verdict before any showing was made, or attempted to be made, pointing to misconduct on the part of the jury or a member thereof. This court has consistently held that a litigant desiring to raise a question concerning misconduct of the jury must act promptly. Flannery v. Commonwealth, Ky., 443 S.W.2d 638. Conceding without holding that appellant promptly presented the question of misconduct on the part of the jury, we proceed to analyze the two affidavits which appellant claims establish misconduct or were sufficient to require the trial judge to make an inquiry therein. We find that the affidavit of Delbert Brown, the panelist who was excused, stated that "while he was assembled in the hall outside of the Courtroom a man who he did not know at the time but later learned to be Mr. T. M. Stinson, * * * who was

a member of the jury panel stated to him in the presence of the other members of the jury that some of his relatives lived next door to the plaintiff and if he were on the jury he would not give her anything but damages to the car. This statement was made in such a tone of voice as to be heard by the other members of the panel." Brown's affidavit also stated that both he and Stinson were excused from jury service on this case. He also stated "that he did not discuss this experience with any other member of the jury but he is extremely confident that the members standing around heard the statements made by Mr. Stinson."

The affidavit of James A. Little, one of the jurors who tried this case, stated that "during the trial of this case" he "heard some man talking about this case"; that he did not know who he was but that he was talking to another man in a loud voice, loud enough that he, affiant, heard him say "he knew the Tilleys and that if it was left up to him, he would give them nothing." Little also stated that three or four other jurors were as close or closer to the speaker than was the affiant and that the entire panel was within hearing distance of the speaker.

Nowhere in any affidavit is there any indication that any member of the jury who tried this case was influenced in any way by the expression of Stinson.

It can hardly be said that the amount of the verdict ($9,462.83) of itself demonstrates prejudice or bias.

 Taking the eye off the squirrel for the moment, it may be observed that this court will not disturb a jury verdict for inadequacy unless it is so disproportionate as to strike the mind at first blush as resulting from passion and prejudice. See Harr v. Betsy Ross Bakeries, Incorporated, Ky., 411 S.W.2d 681; Wilkins v. Hopkins, 278 Ky. 280, 128 S.W.2d 772, and Ewing v. Moody, Ky., 421 S.W.2d 577.

The gist of the comment alleged to have been made in the presence of the jury is that the commentator would not give the Tilleys any damages. In the absence of other evidence of bias or prejudice, this was not sufficient to require the granting of a new trial. Louisville & N. R. Company v. Davis, 115 Ky. 270, 71 S.W. 658, and Leslie v. Egerton, Ky., 445 S.W.2d 116.

Neither do we find an abuse of discretion on the part of the trial judge in not conducting an investigation many weeks after the verdict was returned into court.

The judgment is affirmed.

All concur.